IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS HARDEN, | ) | |
| Petitioner, | ) | Civil Action No. 05-356 ERIE |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| WARDEN JAMES SHERMAN, | ) | **Magistrate Judge Baxter** |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by a federal prisoner be denied.

### II.  REPORT

This is a petition filed pursuant to 28 U.S.C. §2241 by a federal prisoner who alleges that he was denied due process in prison disciplinary proceedings, which concluded with a finding that he illegally possessed a prohibited weapon while incarcerated.  Petitioner was sanctioned with: (1) 60 days Disciplinary Segregation; (2) the loss of 40 days of Good Conduct Time (GCT); and (3) the loss of commissary privileges for 180 days.

#### A.  Relevant Factual and Procedural History

Petitioner Thomas Harden is serving a sentence of 46 months incarceration for a weapons charge and bank fraud imposed on April 22, 2004, in the United States District Court for the Eastern District of Michigan.  On February 14, 2005, while Petitioner was incarcerated at FCI Elkton, Ohio, his cell was searched and a "shank" was found under his wall locker.[1]  An Incident Report was issued that date charging Petitioner with a violation of the Disciplinary Code.

---

[1] At the time this petition was filed, Petitioner had been transferred to FCI McKean, which is located within the Western District of Pennsylvania.  The Court discovered through a search of the Bureau of Prisons website that Harden is now at a Community Corrections Center in New York, and his release date is December 20, 2006.

(Document # 7, Document 1d).  Petitioner was given a copy of the Incident Report on February 15, 2005. (Document #1, page 4; Exhibit A).  He appeared before the Unit Disciplinary Committee (UDC) on February 16, 2005, and denied knowledge of the weapon (Id., page 4).  Petitioner then appeared before the Disciplinary Hearing Officer (DHO) on February 17, 2005, and was found guilty of possessing a prohibited weapon.  The DHO's report shows that Petitioner waived the right to have staff representative present; that he denied the incident; and that he did not request any witnesses (Id., Exhibit B).  The DHO relied upon the following evidence in concluding that Petitioner possessed the weapon:

> Officer Mayle reported on February 14, 2005, at approximated 2010, while searching cube A06-020 he discovered a homemade weapon underneath your wall locker.  The officer reported he confiscated the weapon and turned it over to Lieutenant Johnson.
>
> Also relied upon was the photograph of the weapon.  The photograph illustrates a piece of metal approximately 7 inches in length sharpened to a point.  A handle was wrapped with tape utilized as for a grip.  The weapon was manufactured with the intent of causing bodily harm.
>
> In addition, the DHO relied upon a memo from Officer Taggert who provided information that you had trouble in the past with another inmate and mentioned on different occasions of obtaining a weapon.

(Id., Exhibit B, page 2).

Petitioner filed a "Regional Appeal" asserting that the evidence, including the memo, was inadequate. (Id., Exhibit C).  This appeal was denied on June 23, 2005. (Id.).  Petitioner then filed a "Central Office Appeal," in which he asserted that he was never given access to the memo from Officer Taggert, that the evidence was unreliable, and that he had not been afforded the opportunity to prepare a defense. (Id., Exhibit D).  This appeal was denied on July 24, 2005.

Petitioner now files the instant petition for writ of habeas corpus in which he raises several claims: (1) Petitioner was denied due process when he was not provided with a copy of Officer Taggert's memorandum prior to or during the DHO hearing; (2) Petitioner was denied due process when the inmate referenced in Officer Taggert's memo was not treated as a confidential informant; (3) Petitioner was denied due process when no inquiry was made into whether he was competent to proceed with the DHO hearing due to his having undergone a colonoscopy the day prior to the hearing; and (4) the evidence was not sufficient to support the DHO's conclusion.  A response has

been filed [Document # 7], to which Petitioner filed a reply. [Document # 10].  Respondent filed a sur-reply [Document # 11] and Petitioner filed a traverse. [Document # 14].  The petition is now ripe for disposition.

### B. Exhaustion of administrative remedies and procedural default

Before seeking habeas relief pursuant to §2241, inmates must exhaust available administrative remedies. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir.1996). To exhaust administrative remedies before the BOP, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally. See 28 C.F.R. § 542.13.  If the inmate does not receive a favorable termination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility.  See 28 C.F.R. § 542.14.  If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision.  If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision. See 28 C.F.R. § 542.15.

Respondent concedes that Petitioner proceeded to all required levels of review with respect to his first, second and fourth claims, but notes that he first raised his third claim, a claim that he was not competent to participate in the DHO hearing, in his Central Office Appeal.  This, Respondent asserts, is a procedural default under BOP regulations. 28 C.F.R. §542.15(b)(2)("An inmate may not raise in an Appeal issues not raised in the lower level filings.").  A review of the record reveals that Petitioner did not object during the DHO hearing that he was disoriented or in any way unable to participate in the proceedings. (Document #1, Exhibit B).  Petitioner likewise did not make such an objection when he filed his Regional Administrative Remedy Appeal, even though his objections are lengthy. (Id., Exhibit C).  In fact, the first mention made concerning Petitioner's condition at the time of the DHO hearing is during Petitioner's Central Office Appeal when he states:

> The facts of the incident reveal that on Tuesday, February 15, 2005, I was prepped for a Colonoscopy.  On Wednesday, February 16, 2005, I was placed under Anesthesia for a Colonoscopy at an outside hospital.  On

> Thursday morning, February 17, 2005, at 7:00 am, (while still disoriented from the effects of the anesthesia), I was brought before the DHO.

Not only is the alleged disorientation made as part of a parenthetical, Petitioner also does not indicate at any point in his Central Office Appeal how the alleged impairment prevented him from actively participating in the hearing. In fact, the only actions Petitioner complains he was unable to take at the hearing are not attributed to his alleged disorientation. Instead, Petitioner alleges that he did not call witnesses, nor did he request a staff representative, because a memo from Officer Taggert was not disclosed to him at the time of the hearing:

> Had the DHO made me aware of the above facts at the hearing, I could have called Antonio Jenkins to substantiate the fact that he never observed me with a weapon of any kind. Moreover, had the DHO advised me at the time of the hearing of the evidence upon which he would rely, I would have requested a staff representative to question Officer Taggert and confirm the existence of the memo.

(Id., Exhibit D).

     The allegations in the instant petition, when compared to Petitioner's more recent filings, are also enlightening. The petition filed on December 6, 2005, like Petitioner's Central Office Appeal, notes (this time in a footnote rather than parenthetically) that Petitioner "was still disoriented from the effects of the anesthesia during his disciplinary hearing." (Id., page 4, footnote 1). Nonetheless, Petitioner asserts that he participated in both his Unit Disciplinary Committee (UDC) hearing on February 16, 2005, the same day of his surgery, and that he denied any knowledge of the weapon. (Id., page 4). Petitioner details the defense he presented during the UDC hearing:

> In fact, Petitioner suggested to the UDC that the weapon had been planted underneath his locker after [Petitioner was] placed into the SHU, because the area in which he was assigned were [sic] routinely searched and the unit shake-down log would have supported his claim.

(Id.). Thus, Petitioner's allegations support a finding that he was competent to appear and present a defense the same day of his colonoscopy. Petitioner also alleged active participation in the DHO hearing held the following day:

> Petitioner explained that he could not have been responsible for the sharpen [sic] instrument found underneath his locker, because he has no knowledge of its presence, his finger prints were not on the weapon, and that there was absolutely no evidence to tie him to the weapon since the weapon was

- 4 -

> placed there by any of the other prisoners housed in the same unit ....
> During the disciplinary hearing, Petitioner requested to view the evidence, and the DHO showed him a photograph of the weapon found by officer Mayle on February 14, 2005. No other evidence was revealed to Petitioner....

Nevertheless, Petitioner alleges that he was "disoriented" during the DHO hearing, and even goes so far later in his petition to assert that he was "incapacitated" during the DHO hearing. (Id., page 7). Petitioner relies upon 28 C.F.R. §541.10(b)(6)(ii) and asserts that he should not have been forced to attend the DHO hearing.[2] His own factual averments in the petition, however, establish that he was able to understand the proceeding and to participate in his defense.

Petitioner's recollection of events has changed since he filed his petition. Now, in his reply filed March 21, 2006, Petitioner asserts:

> On February 16, 2005, Harden was transported outside the prison for his medical trip. There had been some complications which required more medication than normally used [for a colonoscopy]. Upon Harden's return to the prison on February 16, 2005, and while still heavily medicated, Harden's UDC hearing was held to which this day he cannot recall such hearing, and early the following morning his DHO hearing was held. Based on Respondent's own agency regulations, the hearings should not have been held until prison officials had made certain that Harden was capable of understanding the disciplinary proceedings.

(Document #10, pages 10-11). This is the first time that Petitioner has asserted he cannot recall the UDC hearing, and the first time he has alleged that he was given more than the normal amount of medication for his colonoscopy. These allegations are entirely inconsistent with the facts alleged in the petition, wherein Petitioner recounts the arguments he made during the UDC hearing.

This lengthy review of the administrative proceedings and the pleadings filed here

---

[2]

The applicable regulation provides that inmates found to be incompetent shall not be forced to participate in disciplinary proceedings:

> (ii) A person is incompetent if that person lacks the ability to understand the nature of the disciplinary proceedings, or to assist in his defense at the proceedings. When a person is determined incompetent, the disciplinary proceedings shall be postponed until such time as the inmate is able to understand the nature of the disciplinary proceedings and to assist in his defense at those proceedings ....

- 5 -

establishes the following: (1) Petitioner did not assert at his UDC hearing, the DHO hearing, or in his Regional Appeal that he was incompetent or incapacitated due to the effects of a colonoscopy he had on February 16, 2005; (2) Petitioner asserted that he was "disoriented" during his DHO hearing on February 17, 2005, for the first time in his Central Office Appeal, but did not assert that this prevented him from presenting a defense; (3) the instant petition contains conclusory allegations that Petitioner was incapacitated during his DHO hearing, but Petitioner also avers facts which conclusively establish that he understood and participated in both the UDC hearing and the DHO hearing; and (4) Petitioner's claim has changed to the point that he now denies any memory of the UDC proceeding, even though he described his participation during the proceeding in the petition.

Petitioner's failure to raise his claim of incapacity either before the DHO or in his Regional Appeal is a default under applicable regulations. 28 C.F.R. §542.15(b)(2).  Petitioner must, therefore, establish cause and prejudice in order to overcome this default.  "In sum, we hold that a federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Moscato, 98 F.3d at 762.  Petitioner concedes that he did not raise a competency issued until his Central Office Appeal. (Document #10, page 6).  He does not, however, assert any cause for this default, i.e., he has failed to allege that some objective factor external to his defense prevented him from timely raising his competency claim during administrative process.  Moscato, at 762; Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000). Instead, Petitioner appears to believe that raising a claim for the first time in his Central Office Appeal is proper.  This, of course, entirely ignores 28 C.F.R. §542.15(b)(2), and the direction in Moscato that inmates must comply with administrative procedures.  Thus, Petitioner cannot overcome the procedural default and his claim that he was incapacitated during the DHO hearing may not be addressed here.

### C.     Merits of the Remaining Claims

The court's analysis of Petitioner's remaining, properly exhausted claims begins with Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings.  A prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest.  Id.  Even so, this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding.  Id. at 556-57.  Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated."  Id. at 557.  For example, confrontation and cross-examination are not constitutionally mandated in this setting.  Id. at 567.

The Supreme Court has enumerated the following five procedural safeguards which are required in a prison disciplinary proceeding:

> (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion.

Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa. 1994).[3]  A court must reject the evidentiary challenges of a petitioner if there exists in the record "some evidence" to support the decision of the hearing examiner.  Superintendent v. Hill, 472 U.S. 445, 457 (1985); Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D.Pa. 2003).  It must be remembered, however, that "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Hill, 472 U.S. at 455-56.

Petitioner first asserts that he was denied access to a memorandum prepared by the

---

[3] These five requirements have been incorporated into the Code of Federal Regulations at 28 C.F.R. §541.17.

investigating officer, Officer Taggert, and that this denied him the opportunity to prepare a defense to the charges.  The memorandum reflects a conversation Officer Taggert had with one of the two other inmates who shared Petitioner's cubicle. (Document #7, Document 1d, page 4).  The other inmate denied any knowledge of the weapon, but stated that Petitioner had trouble with another inmate a month earlier, and had commented on two occasions that he needed a "shank." (Id.).  This memorandum, with the inmate's name and identifying information redacted, was attached to the DHO's report along with a picture of the weapon (Id.).  The officer who held the hearing has provided a declaration in which he states that he did advise Petitioner of the memorandum, and that Petitioner did not question it at the time of the DHO hearing (Document #7, Document 2).  Resolution of this dispute of fact, i.e., whether the memorandum was disclosed at the time of the hearing, is not necessary, however, because prior disclosure of investigative materials is not necessary to comply with Wolff.  Instead, Wolff mandates that notice of the charges be timely provided, and that any evidence relied upon by the DHO be included in his report. Wolff, supra; Van Kahl, supra.  Each of these was unquestionably done in this case.

Likewise, BOP regulations provide that the prisoner will receive a copy of the Incident Report, but do not provide for disclosure of the evidence relied upon.  28 C.F.R. §541.14.  Thus, there is simply no requirement that investigative materials be turned over to the prisoner prior to the hearing.[4]

Petitioner also asserts that he was denied sufficient time to prepare for the DHO hearing. Wolff requires that inmates be given 24 hours notice of such hearings.  563 U.S. at 563.  Here, Petitioner was afforded 48 hours written notice of the charges prior to his DHO hearing.  Hence,

---

[4] Petitioner asserts that he was prejudiced because the memorandum contained exculpatory evidence.  A review of the memorandum reveals that this is simply inaccurate.  He also asserts that he would have called as a witness another prisoner who would have testified that he never saw Petitioner in possession of a weapon.  In this respect, Petitioner seems to assert that he has the right to attempt to impeach any information relied upon the DHO, but this is simply inaccurate.  Prisoners are not entitled to cross-examination or confrontation at an administrative hearing. Hill., supra.  Hence, any claim which has at its base a claim that petitioner was denied the right to have a witness testify on his behalf would fail. See, e.g., Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993)("disciplinary actions may be taken - and often they are - based only on a guard's [written] report").

this claim fails.

Petitioner also asserts that the DHO failed to follow applicable BOP regulations concerning the use of a confidential informant with respect to the treatment of the investigative memorandum. Specifically, he asserts that the information in the memorandum should not have been used absent specific findings about the informant's reliability. (Document # 7, Document 1j, page 5). The applicable regulation defines a "confidential informant" as someone "who provides staff (usually at the person's initiation) information about the commission of an offense or about misconduct in an institution." (Id.). The memorandum, though, does not contain information concerning the offense, i.e., possessing the prohibited weapon, because the inmate interviewed had no knowledge of the weapon. Instead, the inmate's recollection of Petitioner's problem with another inmate and Petitioner's comments about needing a "shank" was utilized as "negative information" under BOP regulations. Negative information, such as the example given in the regulations of "known peddler of contraband," may be used in a disciplinary hearing. (Id). Similarly, information that Petitioner twice mentioned a need for a "shank" is negative information rather than direct information concerning Petitioner's possession of the weapon itself. Thus, the DHO did not violate BOP regulations in failing to treat Officer Taggert's memorandum as containing information from a confidential informant, and this claim lacks merit.

Petitioner's final argument is that the evidence against him is not sufficient because the DHO could not rule out the possibility that another inmate placed the shank under his locker. This is a challenge to the "constructive possession" finding implicit in the DHO's ruling, a matter which has been addressed at some length by other circuits, but which the Court of Appeals for the Third Circuit has not yet addressed in a reported opinion. Thus, resort must be made to other courts to determine the limits of the "constructive possession" doctrine in the context of prison disciplinary proceedings. The issue was discussed at length in Cardenas v. Wigen, 921 F.Supp. 286, 288-289 (E.D.Pa. 1996):

> Although there was no direct evidence that any individual inmate was responsible for the forbidden materials, Petitioners and their cellmates were adjudged guilty of the charged offenses based upon Program Statement 5270.7 ("Inmate Discipline and Special Housing Units"), which provides that when contraband is discovered, all inmates residing in the room are

>mutually responsible if the contraband cannot be identified as belonging to a specific individual. The principle embodied by Program Statement 5270.7, known as "constructive possession," see White v. Kane, 860 F.Supp. 1075 (E.D.Pa.1994), aff'd, 52 F.3d 319 (3d Cir.1995), is grounded in notions of collective guilt, i.e., all members of a group are responsible for an offense when the specific offender can not be identified.  See Hamilton v. O'Leary, 976 F.2d 341, 347 (7th Cir.1992) (Posner, J., dissenting); Ustrak v. Fairman, 781 F.2d 573, 575 (7th Cir.), cert. denied, 479 U.S. 824 (1986).

The court in Cardenas went on to disapprove of the Magistrate Judge's ruling which found that a 1 in 12 possibility of involvement was sufficient to satisfy the Hill standard.  That court's analysis is set forth at length since it accurately reflects the law in this area:

>>In the absence of direct evidence pointing to an inmate's guilt, the "some evidence" standard of Hill may be satisfied by application of the constructive possession doctrine. See Hamilton v. O'Leary, 976 F.2d 341 (7th Cir.1992).  In Hamilton, plaintiff brought suit after he and his three cellmates were found guilty by their prison disciplinary board of possessing six homemade weapons discovered in a large vent in their cell even though there was no direct evidence linking plaintiff or any of his cellmates to the contraband. In affirming the judgment of the district court dismissing plaintiff's claim, the Hamilton majority adopted a probability approach based upon the number of prisoners having access to the area where the contraband was found.  The Court determined that the facts presented to the prison hearing board indicated that there was a 25% (one in four), probability that the plaintiff was responsible for the discovered contraband.  Id. at 346.  The Court held that this probability constituted "some evidence" of guilt as required by Hill.  Id.  Writing for the majority, Judge Manion reasoned that at least in cases where "contraband is found where only a few inmates have access," use of the constructive possession doctrine to satisfy the Hill standard is "unproblematical."  Id. at 345 (citing Hill, 472 U.S. at 456-57(*three* inmates observed fleeing from the scene of an assault); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir.1990) (contraband found in locker shared by *two* inmates); see Lasley v. Godinez, 833 F.Supp. 714 (N.D.Ill.1993) (contraband discovered behind panel located above inmate's cell door presented one in *two* chance of guilt-contraband belonged either to inmate or individual who occupied the cell before him); Harms v. Godinez, 829 F.Supp. 259 (N.D.Ill.1993) (contraband found bagged with trash in commissary work area staffed by *six* inmates).

Id.  The Cardenas court agreed with Judge Posner's position in dissent in Hamilton and, in the absence of any direct evidence linking the weapon to a specific prisoner, determined that the mere presence of the weapon in a cell shared by 12 inmates was not "some evidence" of guilt:

>>Here the 8.3% (one in twelve) probability that any individual Petitioner committed the offenses is only half as great as the 16.7% (one in six), probability which was reluctantly found acceptable in Harms and 1/3 as great as the 25% (one in four), chance of guilt validated as sufficient under

- 10 -

> Hill by the Hamilton majority. Under these circumstances, the Court can not say that there was "some evidence" to support the disciplinary board's decision that Petitioners were guilty of the violations charged.

Id. at 289.

In this case, Petitioner and two other inmates shared the area in question. Thus, the relevant odds are 1 in 3, not 1 in 12, making Harms a much more analogous situation. While it would be improper to reduce the law in this area to a mathematical formula where any odds of actual possession are 1 in 6 or greater would satisfy the constitutional standard, it is also true that the applicable standard calls for "some evidence" supporting the DHO's findings. This level of proof necessarily does not approach proof beyond a reasonable doubt, clear and convincing proof, or even proof by a preponderance of the evidence. In finding a 1 in 6 likelihood of actual possession sufficient standing alone to warrant a finding of constructive possession, courts have attempted to approximate a level of proof which insulates the findings of the DHO from being entirely ungrounded and arbitrary. In this respect, Judge Posner thinks a threshold is certainly crossed at the 1 in 8, or 12.5% likelihood. However, no jurist has gone on record as quarreling with a finding that a 1 in 6 likelihood of actual possession is sufficient to support a finding of constructive possession. Therefore, this Court agrees that, where the realistic probability of a prisoner's actual possession of contraband is 1 in 6 or greater, as it certainly is in this case where only two other inmates shared the cubicle, that the "some evidence" standard is met for purposes a prison disciplinary proceeding. The DHO's decision in this case is supported by the requisite evidence and, accordingly, may not be reversed in this court.

**III.   CONCLUSION**

For the foregoing reasons, it is respectfully recommended that this Petition for Writ of Habeas Corpus be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file

timely objections may constitute a waiver of any appellate rights.

                                                   /s/Susan Paradise Baxter  
                                            SUSAN PARADISE BAXTER  
                                            Chief U.S. Magistrate Judge

Dated: December 5, 2006

cc:     The Honorable Sean J. McLaughlin  
        United States District Judge